

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**MOHAMED ALI SAID,**

**Petitioner,**

v.

**CRIMINAL ACTION NO. 2:10-cr-57-1**

**UNITED STATES OF AMERICA,**

**Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255, filed through

counsel on January 19, 2021. ECF 547. On March 19, 2021, the Government filed a response in

opposition and Petitioner replied on April 15, 2021. ECF Nos. 573, 587. Having reviewed the

motion and filings, this Court finds that a hearing is not necessary to address these motions. For

the reasons set forth below, Petitioner's Motion is **GRANTED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On February 27, 2013, a jury convicted Petitioner of the following:

- Count 1: Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203(a);
- Count 2: Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c);
- Count 3: Conspiracy to Perform Act of Violence Against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(9);
- Count 4: Conspiracy Involving a Firearm and a Crime of Violence, in violation of § 924(o);
- Count 5: Piracy under the Law of Nations, in violation of 18 U.S.C. § 1651;
- Count 6: Attack to Plunder a Vessel, in violation of 18 U.S.C. § 1659;
- Count 7: Assault with a Dangerous Weapon on Federal Officers and Employees, in violation of 18 U.S.C. § 111(a)(1), (b);
- Count 8: Act of Violence against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(6);
- Counts 9 and 10: Use or Possession of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).

ECF No. 204. On March 13, 2013, Petitioner moved for acquittal pursuant to Rule 29 and filed

a Motion to Dismiss Count Two. ECF Nos. 222, 223. On August 1, 2013, the Court denied Petitioner's motion to dismiss. ECF No. 244. On February 28, 2014, the Court declined to impose statutorily mandated life sentences on the Petitioner, reasoning that such a sentence would contravene the Eighth Amendment's prohibition against cruel and unusual punishment. ECF No. 260. On May 16, 2014, Petitioner was sentenced to a total of 500 months' imprisonment. ECF No. 274. On May 21, 2014, the Government filed an appeal with the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 287. On August 13, 2015, the Fourth Circuit reversed the Eighth Amendment Order, vacated the defendants' sentences, and remanded for resentencing. ECF Nos. 342, 343; *see also United States v. Said*, 680 F.3d 374 (4th Cir. 2012). On September 9, 2016, the U.S. Supreme Court denied Petitioner's Writ for Certiorari. ECF No. 351.

On November 7, 2016, Court re-sentenced Petitioner to aggregate prison sentence of 396 months, consisting of 120 months on Counts 1, 2, 3, 4, 5, 6, 7, and 8, all to be served concurrently; 96 months on Count 9, to be served consecutively to Count 1; and 180 months on Count 10, to be served consecutively to Count 9. ECF Nos. 375, 379. ECF No. 379, at 3.

On July 29, 2020, the Court denied Petitioner's Motion to reduce under the First Step Act. ECF No. 490. On July 8, 2020, Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255. On July 17, 2020, the Government filed a Motion to Dismiss or Strike Petitioner's § 2255 Motion. On November 20, 2020, the Court granted the Government's motion to Dismiss without prejudice Petitioner's § 2255 Motion and granted Petitioner leave to file his petition pursuant to the rules governing § 2255 proceedings within sixty (60) days. On January 19, 2021 (60 days later), Petitioner filed the instant Motion to Vacate under 28 U.S.C. § 2255.

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of

3

constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493. Moreover, a habeas petition is cognizable when, based on a change in the law subsequent to his conviction, a defendant claims that his "conviction and punishment are for an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, at 346 (1974); *see also Welch v. United States*, 136 S. Ct. 1257, 1267 (2016); *Teague v. Lane*, 489 U.S. 288 (1989).

### III. DISCUSSION

Petitioner raises two claims for collateral review. ECF No. 574. First, Petitioner argues that Count Nine of the Second Superseding Indictment must be vacated because, in light of the Supreme Court's decisions in *Davis* and *Johnson*, the underlying conspiracy offense does not qualify as a predicate crime of violence pursuant to § 924(c). ECF 547; *see United States v. Davis*, 139 S. Ct. 2319 (2019) (holding that the residual clause of definition of violent felony in § 924, providing mandatory minimum sentences based on using, carrying, or possessing a firearm in connection with a federal crime of violence, was unconstitutionally vague.); *see also, Johnson v. United States*, 576 U.S. 591, 591 (2015) (holding that 18 U.S.C.A. § 924(e)(2)(B)(ii)'s definition of prior "violent felony" in the residual clause of the Armed Career Criminal Act is unconstitutionally vague under due process principles.). Second, Petitioner alleges that Counts Four and Ten must also be vacated because at least three of the alternative predicate offenses underlying the 924 convictions do not qualify as crimes of violence. *See* 18 U.S.C. § 924(c)(3)(B) (previously defining a crime of violence under the residual clause as a felony offense "that by its nature[ ] involves a substantial risk that physical force against the person or property of another

4

may be used in the course of committing the offense"); *see also*, *Welch v. United States*, 136 S. Ct. 1257, 1263-1268 (2016) (holding that the *Johnson* decision, announced a substantive rule that applied retroactively on collateral review.).

The Court will address each claim in turn.

## A. Petitioner's Claims are Not Procedurally Defaulted

As an initial mater, the Court finds that Petitioner's claims are not procedurally defaulted. The Government argues that Petitioner's claims are procedurally defaulted because he did not raise these issues on direct appeal and that also he cannot show actual innocence or neither cause nor prejudice to excuse default. *See* ECF No. 573 at 7-12.

Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *Mikalajunas*, 186 F.3d at 492. Accordingly, a petitioner's default for a claim on collateral review "may be excused in two circumstances: where [Petitioner] can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)). The Court will examine these issues in turn.

### 1. Petitioner Did Not Establish Actual Innocence

First, the Court finds that Petitioner has not established actual innocence. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Here, Petitioner has not argued that he is innocent. Thus, where Petitioner fails to provide any factual allegations to support this

claim, the Court cannot grant such a claim. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir 1992).

## 2. Petitioner has Actual Cause and Prejudice

Second, however, the Court finds that Petitioner has actual cause and prejudice.

The "actual prejudice" inquiry focuses on "the errors of which [the movant] complains." *United States v. Frady*, 456 U.S. 152, at 168 (1982). Particularly, the Court must examine whether a movant can establish "actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). "The degree of prejudice we have required a prisoner to show" is whether "the resulting conviction violates due process." *Frady* at 169. However, on collateral review, the prejudice standard is more difficult to establish. *See Frady*, 456 U.S. 152, 166 (1982) (rejecting "use of the 'plain error' standard to review [a] § 2255 motion" and stating "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"); accord *United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994) ("hold[ing] that the *Frady* cause and prejudice standard applies to … collateral challenges to unappealed guilty pleas").

In this case, Petitioner has cause because there was a substantive change in the law. In 2019, the United States Supreme Court decided *Davis*, and, thus, Petitioner did not have a reasonable basis for challenging his § 924(c) and § 924 (o) convictions predicated on conspiracy counts after he was convicted and resentenced in 2016. *See Reed v. Ross*, 468 U.S. 1, at 16 (1984) (holding that cause exists when "claim is so novel that its legal basis [was] not reasonably available to counsel"). Notably, the Government concedes that Petitioner satisfies the cause standard because his *Davis* claim was "a previously unknown, novel legal basis for the challenge" to his convictions. *See* ECF No. 573 at 8. Moreover, the Court's analysis is consistent with sister jurisdictions which have

6

excused a petitioner's default and found cause with respect to challenging § 924(e)'s residual clause. *See United States v. Lassend*, 898 F.3d 115, 122–23 (1st Cir. 2018); *Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018); *Cross v. United States*, 892 F.3d 288, 294–96 (7th Cir. 2018); *Ezell v. United States*, 743 F. App'x 784, 785 (9th Cir. 2018); *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017). Finally, this case is distinguishable from *Apprendi*, where the Court found that defendants could not establish cause for failing to raise *Apprendi* claims because defendants "had been making *Apprendi*-like arguments ever since the guidelines came into being." *United States v. Sanders*, 247 F.3d 139, 145 (4th Cir. 2001); *see also, Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Second, and as detailed further below, Petitioner also meets the prejudice requirement because his substantial rights were affected. As a result of his unconstitutional conviction, he was sentenced to 396 months in prison based on the § 924(c) and § 924 (o) convictions. Specifically, Petitioner was sentenced to an additional 96 months on Count Nine, to be served consecutively to Count 1 and Four, and 180 months on Count Ten, to be served consecutively to Count Nine. ECF Nos. 375, 379. ECF No. 379, at 3.

Therefore, the Court finds that Petitioner procedural default is excused.

## B. Count Nine: Predicate Offenses Do Not Qualify as a Crime of Violence

Petitioner first alleges that because his § 924(c) conviction under Count Nine was predicated solely upon conspiracy offenses, it does not itself qualify as a crime of violence under § 924(c)(3)(A). *See* ECF No. 140, at 12; *see also, United States v. Simms*, 914 F.3d 229, 233 (4th Cir.), *cert. denied*, 140 S. Ct. 304, 205 L. Ed. 2d 196 (2019) (holding that "conspiracy to commit Hobbs Act robbery—does not categorically qualify as a crime of violence under the elements-

based categorical approach...."). Notably, the Government agrees that Petitioner's conviction on Count Nine should be vacated in light of *Davis*. *See* ECF No. 573 at 26.

    1.   <u>There was an Error</u>

    The Court finds that there was an error with respect to Count Nine because Petitioner's conviction was predicated solely on the conspiracy convictions which are unconstitutional after *Davis*.

    Section 924(c)(1)(A) "provides that a person who uses or carries a firearm 'during and in relation to any crime of violence' or who 'possesses a firearm' 'in furtherance of any such crime' may be convicted of both the underlying crime and the additional, distinct crime of utilizing a firearm in connection with a 'crime of violence,' with the latter punishable by at least five consecutive years of imprisonment." *Simms*, 914 F.3d at 233 (quoting 18 U.S.C. § 924(c)(1)(A)). That is, 18 U.S.C. § 924(c)(1)(A) prohibits the use, carrying, possession, brandishing, or discharge of a firearm in furtherance of a "crime of violence." 18 U.S.C. § 924(c)(1)(A). Previously Section 924(c)(3) defined "crime of violence" as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

    As noted by *Simms,* Courts refer to § 924(c)(3)(A) as the "force clause" and to § 924(c)(3)(B), the provision at issue here, as the "residual clause." *Simms* at 233. Critically, the Supreme Court held that the "residual clause" is indeed unconstitutionally vague, and, thus struck it down. *Davis*, 139 S. Ct. at 2323–24. Therefore, a conviction under § 924(c)(1)(A) may only be made if the predicate offense is a "crime of violence" as defined under § 924(c)(3)(A). That is, under this remaining clause, an offense is a "crime of violence" if it "has as an element the use, attempted

use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

In the instant matter, Petitioner's convictions stem from two separate encounters between the defendant and two warships. ECF No. 140. As alleged in the indictment, the predicate offenses for Count Nine are the Conspiracy to Commit Hostage Taking charge (Count One), the Conspiracy to Commit Kidnapping charge (Count Two), and the Conspiracy to Perform an Act of Violence against Persons on a Vessel charge (Count Three). *Id.*

Previously, with respect to Petitioner's co-defendant, the Court held that since "Count Nine is predicated solely by the conspiracy convictions in Counts One through Three, Petitioner's sentence on Count Nine depends entirely on the residual clause… and Count Nine is therefore based on an unconstitutional statutory provision, and should be vacated." *Cabaase v. United States*, 395 F. Supp. 3d 724, 731 (E.D. Va. 2019), *appeal dismissed*, No. 19-7288, 2019 WL 8194033 (4th Cir. Nov. 14, 2019). In making this determination, the Court relied on *Simms* where the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held that "conspiracy charges cannot be crimes of violence under § 924(c)(3)(A) and would only be cognizable under the now-unconstitutional § 924(c)(3)(B)." *Id.* (citing *Simms*, 914 F.3d at 233–34).

Accordingly, the Court similarly holds that because Count Nine is predicated on § 924(c)(3)(B), an unconstitutional statutory provision, there is an error.

### 2. The Error was Not Harmless

An error is harmless on collateral review unless it had a "substantial and injurious effect" on the defendant's conviction. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *accord Barnes v. Thomas*, 938 F.3d 526, 533 n.3 (4th Cir. 2019) (explaining that the *Brecht* standard is a "'less onerous harmless-error standard' than the requirement on direct appeal that an error be

proven 'harmless beyond a reasonable doubt'") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The error "'may be quantitively assessed in the context of other evidence presented [at trial] in order to determine whether [the error was] harmless beyond a reasonable doubt.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, at 148 (2006) (citing *Arizona v. Fulminante*, 499 U.S. 279 at 307–08 (1991)). Petitioner bears the burden of showing that the error was not harmless. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Here, Petitioner has met the burden of showing that the error was not harmless because Petitioner was convicted on Count Nine and sentenced to an additional 96 months incarceration, to be served consecutively to Count 1. ECF Nos. 375, 379. ECF No. 379, at 3.

Accordingly, Petitioner's Motion is **GRANTED** and Petitioner's conviction pursuant to Count Nine is vacated.

## C. Counts Four and Ten: The Error Was Not Harmless

Second, Petitioner alleges that since at least three of the seven alternative crime-of-violence predicates for Count Four, in violation of § 924(o), and Count Ten, in violation of § 924(c), offenses, no longer qualify as crimes of violence after *Davis,* the Court should also vacate these convictions. ECF No. 547.

### 1. There was An Error

Like Count Nine, the Court must determine whether there was an error in convicting Petitioner of Counts Four and Ten of the Second Superseding Indictment. *See* ECF No. 140.

#### a. *Defining "Physical Force" and The Modified Categorical Approach*

As noted above, 18 U.S.C. § 924(c)(1)(A) prohibits the use, carrying, possession, brandishing, or discharge of a firearm in furtherance of a "crime of violence," as defined by 18 U.S.C. § 924(c)(3)(A). To determine whether a predicate offense qualifies as a "crime of violence," under

§ 924(c), the Supreme Court instructs that courts must use the "categorical approach." *See United States v. Runyon,* 994 F.3d 192, 200 (4th Cir. 2021) ("[b]ecause § 924(c)(3) requires [courts] to focus on the elements of the offense — defining 'crime of violence' as a felony that has 'as an element' the use of force— we apply the categorical approach") (citing *Davis,* 139 S. Ct. at 2327-28). Traditionally, under the categorical approach, the Court only considers the statutory definition of the offense by its elements and the fact of conviction and does not consider the actual facts supporting conviction. *See Taylor v. United States,* 495 U.S. 575, at 602 (1990); *United States v. Bell,* 901 F.3d 455, at 468–69 (4th Cir. 2018); *United States v. McNeal,* 818 F.3d 141, at 152 (4th Cir. 2016). Furthermore, as the Court examines the elements of the offense, it must determine whether "there is a realistic probability — not merely a theoretical possibility — that the minimum conduct necessary for conviction ... involves the *use of physical force* as defined by federal law." *United States v. Rumley,* 952 F.3d 538, 548 (4th Cir. 2020) (emphasis added); *see also United States v. Allred,* 942 F.3d 641, 648 (4th Cir. 2019) (similar); *United States v. Runyon,* 994 F.3d 192, 200 (4th Cir. 2021) (same).

Critically, courts have consistently defined "physical force" to mean "*violent force* — that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States,* 559 U.S. 133, at 140 (2010); *see also, Stokeling v. United States,* 139 S. Ct. 544, at 553 (2019) (same); *United States v. Allred,* 942 F.3d 641, at 652 (same). Specifically, phrase "*use* of physical force" in the force clause requires "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft,* 543 U.S. 1, at 9 (2004); *see also Allred,* 942 F.3d at 652 ("[A]n offense will not have as an element the 'use' of force sufficient to qualify as a violent felony if it does not have the requisite level of mens rea"). By contrast, "the *knowing or intentional causation* of bodily injury *necessarily* involves the use of physical force." *United States v.*

11

*Castleman*, 572 U.S. 157, at 169 (2014) (emphasis added); *see also United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019).

In circumstances where an offense includes alternative elements for conviction, it becomes divisible, and courts may then use a "modified categorical approach" to determine "which element played a part in the defendant's conviction." *Descamps v. United States*, 570 U.S. 254, at 260 (2013). Under this approach, the court may look to the terms of the relevant charging document, jury instructions, plea agreement, plea colloquy, and the like. *See Mathis v. United States*, 136 S. Ct. 2243, at 2249 (2016); *Shepard v. United States*, 544 U.S. 13, at 26 (2005); *United States v. Allred*, 942 F.3d 641, at 648 (4th Cir. 2019) (noting that under the modified categorical approach, we "consult a limited set of record documents ... for the sole purpose of determining 'what crime, with what elements, a defendant was convicted of' " (quoting *Mathis*, 136 S. Ct. at 2249)). As noted by the *Runyon* Court, "'[o]nce the court has [under the modified categorical approach] consulted the record and isolated the specific crime underlying the defendant's conviction, it must then apply the categorical approach to determine if it constitutes a [crime of violence],'"considering only the elements of the identified crime and the fact of conviction." *Runyon* 994 F.3d at 201 (quoting *Allred*, 942 F.3d at 648).

### b. *Applying the Modified Categorical Approach to Find Error*

In this case, Petitioner was convicted of Conspiracy Involving a Firearm and a Crime of Violence, in violation of § 924(o) (Count 4) and Use or Possession of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 9 and 10). Notably, to satisfy the elements of Counts Four and Ten, the Government relied on seven alternative potential predicates for Counts Four and Ten. Accordingly, since the Government relied on alternative elements to convict Petitioner of Counts Four and Ten, these convictions are divisible, and the Court will

proceed to use the "modified categorical approach" to determine which element(s) were vital for Petitioner's convictions. *See Descamps* at 260.

To determine which alternative crimes necessarily served as the basis for the§ 924 convictions in Counts Four and Ten, the Court will turn to the *Shepard* documents. *See Shepard*, 544 U.S. at 26 (holding that Court's inquiry to determine whether defendant sufficient pled to the necessary elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information"); *see also United States v. Bryant*, 949 F.3d 168, at 173 (4th Cir. 2020) ("If a court determines that the underlying statute is divisible, and that application of the modified categorical approach is therefore appropriate, then it may examine a limited set of documents, such as the indictment, jury instructions, or plea agreement and colloquy") (internal quotations omitted); *see also, United States v. Runyon*, 994 F.3d 192, 202 (4th Cir. 2021) ([t]hus, as allowed by the modified categorical approach, we review the indictment on which [defendant] was convicted and the jury instructions leading up to the conviction to determine the actual crime for which [defendant] was convicted").

In the instant matter, Count Four of the Second Superseding Indictment alleged that Petitioner:

> ...conspired (1) to possess a firearm and firearms and a destructive device in furtherance of the commission of a crime of violence for which they may be prosecuted in a court of the United States, which crimes are further described below, and (2) to use and carry a firearm and firearms and a destructive device during and in relation to the commission of a crime of violence for which they may be prosecuted in the court of the United States, namely: *the crimes charged respectively in Counts 1,2, 3, 5, 6, 7, and 8* of this Indictment, which description of each said crime of violence is re-alleged and incorporated by reference as if set forth in full herein.

ECF No. 140 at 7 (emphasis added). Similarly, Count Ten alleged that Petitioner:

> [D]id knowingly and unlawfully use, carry, and discharge a firearm and firearms during and in relation to the commission of a crime of violence for which they may be prosecuted in a court of the United States, namely: *the crimes charged respectively in Counts 1,2, 3, 5, 6, 7, and 8* of this Indictment, which description of each said crime of violence is re-alleged and incorporated by reference as if set forth in full herein.

*Id.* at 13 (emphasis added). In sum, both Counts Four and Ten were predicated on offenses charged in Counts 1, 2, 3, 5, 6, 7, and 8. In support of Counts Four and Ten, the Government alleged the following relevant overt acts with respect to Petitioner. In February 2010, Petitioner and his co-defendants conspired on several occasions to go onto sea with firearms, a handgun, and a hooked ladder to hijack a ship and hold the ship and its crew for ransom. *Id.* at 2-3. Then, "[o]n or about April 10,2010, [Petitioner and his co-defendants] approached a vessel they had been following. *One of the conspirators* raised an AK-47 firearm and began firing. The vessel under attack was in fact the USS Ashland, of the United States Navy." *Id.* at 4 (emphasis added). Finally, the Indictment alleges that, "[o]n or about April 10, 2010, after their boat had been hit by return fire from the USS Ashland, [Petitioner and his co-defendants] agreed to make false statements and to tell the Navy and government that they were human smugglers who had become stranded at sea." *Id.*

Although Counts Four and Ten specified the predicate offenses, the jury instructions did not. *See* ECF No. 204 (Jury Instructions). Notably, the general verdict form only asked the jury to check-off whether Petitioner was guilty or not guilty of Counts Four and Ten. *Id.* For example, with respect to Count Four, the Court instructed the jury that:

> In order to sustain its burden of proof on this conspiracy charge, you are going to have the same pattern we had once before. The first thing the government has to prove is the existence of the conspiracy, the agreement, or understanding as described in Count Four; that it was formed, reached, or entered into by two or more persons. Then they have to prove that at some time during the existence or the life of the conspiracy, agreement, or understanding each defendant knew the purpose of the agreement; and Third, with knowledge of the purpose of the conspiracy,

14

> agreement, or understanding, the defendant then deliberately joined the conspiracy, agreement, or understanding.

ECF No. 334 at 129; Trial Tr. 569: 9-23. Similarly, as to Count Ten, the Court instructed the jury

as follows:

> In order to sustain its burden of proof for Count Ten, the government must prove each of the following two elements beyond a reasonable doubt:
>
> That the defendant committed *any one or more* of the crimes charged in Counts One, Two, Three, Four, Five, Six, Seven, *and* Eight of this indictment;
>
> Two: That during and in relation to the commission of that crime or crimes, the defendant knowingly used or carried a firearm.

ECF No. 334 at 143; Trial Tr. at 583: 3-11 (emphasis added). The Court further instructed the jury,

as to Count Ten, that:

> If upon all the evidence, that is, looking at the evidence, you find that the Government has failed to prove the commission of any of the crimes of violence charged in Counts One, Two, Three, Five, Six, Seven, *or* Eight of the indictment beyond a reasonable, then you will go no further, as Count Ten is to be considered only if you have found defendant guilty of *at least one* of the crimes of violence charged in Counts One, Two, Three, Five, Six, Seven, *or* Eight.

ECF No. 334, at 144; Trial Tr. 584: 15-23 (emphasis added).[1] Accordingly, based on the jury

instructions, the record shows that the Court erred in clearly instructing the jury to specifically

identify the underlying crimes of violence required to sustain a conviction for the § 924(o) (Count

Four) and § 924(c) (Count Ten) charges. At best, the Court's jury instructions allowed the jury to

convict Petitioner of Counts Four and Ten if the jury found Petitioner guilty of *any* or at least one

of the underlying crimes of violence. However, as explained below, the imprecise jury instructions

---

[1] With respect to Count Four, the Court instructed the Jury as follows: "The first thing the government has to prove is the existence of the conspiracy, the agreement, or understanding as described in Count Four; that it was formed, reached, or entered into by two or more persons. Then they have to prove that at some time during the existence or the life of the conspiracy, agreement, or understanding each defendant knew the purpose of the agreement; and Third, with knowledge of the purpose of the conspiracy, agreement, or understanding, the defendant then deliberately joined the conspiracy, agreement, or understanding." *See* ECF No. 334, at 129; Trial Tr. 569:9-23.

resulted in harmful errors that substantially prejudiced Petitioner's rights.

The Court's next step is to determine whether each alternative predicate offense qualifies as a crime of violence. *See United States v. Vann*, 660 F.3d 771, 774–75 (4th Cir. 2011) (en banc) (holding that "the absence of a specifical verdict identifying the factual bases for conviction," the modified categorical approach requires the court to find that *every predicate* listed in those counts qualifies under the force clause) (emphasis added); *see also, Curtis Johnson*, 559 U.S. at 137; *Runyon*, 994 F.3d at 201 (same). Since, there was no special verdict form for documenting the precise predicates the jurors relied on to convict Petitioner of the Counts Four and Ten, the underlying statute is divisible, and the Court must now find that every plausible predicate listed for each count qualifies under the force clause.

Critically, as noted above, three (Counts 1-3) out of the seven offenses do not qualify under the force clause because they are conspiracy counts, which the *Davis* Court found to be constitutionally deficient to qualify as predicates to a § 924(c)(1) offense.[2] *See infra* at 7-12; *see also, Davis,* 139 S. Ct. 2319 (2019). On the other hand, at least two Counts, Seven and Eight,[3] do plainly qualify as crimes of violence because these Counts involve a "the *knowing or intentional causation* of bodily injury [which] *necessarily* involves the use of physical force." *United States v. Castleman*, 572 U.S. 157, at 169 (2014) (emphasis added); *see also United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019). Both the Government and Defendant agree that these two offenses plainly qualify as crimes of violence. *See* ECF No. 573 at 12; *see also,* ECF No. 547.

However, there is dispute as to whether Counts Five and Count Six qualify as crimes of

---

[2] Petitioner was convicted of the following conspiracy charges: Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203(a) (Count 1); Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c) (Count 2); and Conspiracy to Perform Act of Violence Against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(9) (Count 3).

[3] Petitioner was convicted of Assault with a Dangerous Weapon on Federal Officers and Employees, in violation of 18 U.S.C. § 111(a)(1), (b) (Count 7) and Act of Violence against Persons on a Vessel, in violation of 18 U.S.C. § 2291(a)(6) (Count 8).

violence. *Id.* The Court finds that based on the Fourth Circuit's precedent, Counts Five and Six likely do qualify as crimes of violence. With respect to Count Five, for example, the Fourth Circuit clarified that Piracy under the Law of Nations, in violation of 18 U.S.C. § 1651, is likely a crime of violence in accordance with "contemporary customary international law." *United States v. Hasan*, 747 F. Supp. 2d 599, 640 (E.D. Va. 2010), *aff'd sub nom United States v. Dire,* 680 F.3d 446 (4th Cir. 2012). Specifically, the elements for Piracy are as follows: (1) that the defendant committed an act of piracy as defined by the law of nations; (2) that the defendant did so on the high seas; and (3) that afterwards the defendant was brought into or found in the United States. *See United States v. Dire*, 680 F.3d 446, at 451 (4th Cir. 2012) (explaining that "Congress intended to define piracy as a universal jurisdiction crime[,]" and, thus, § 1651 "incorporates a definition of piracy that changes [or evolves] with advancements in the law of nations"). Although these elements do not clearly constitute a *prima facie* crime of violence, the Fourth Circuit clarified that Piracy includes any of the following three actions:

> (1) *any illegal acts of violence* or detention or any act of depredation committed for private ends on the high seas or a place outside the jurisdiction of any state by the crew or the passengers of a private ship and directed against another ship or against persons or property on board such ship; or
> (2) any act of voluntary participation in the operation of a ship with knowledge of facts making it a pirate ship; or
> (3) any act of inciting or of intentionally facilitating an act described in either (1) or (2) above.

*Dire* at 458-59. Thus, Piracy would likely qualify as a knowing and intentional "*use* of physical force" which is "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, at 9 (2004).

Similarly, with respect to Count Six, the Fourth Circuit also agreed with the district court's holding that Attack to Plunder a Vessel, in violation of 18 U.S.C. § 1659 (Count 6), also likely constitutes as a crime of violence. *See United States v. Dire,* 680 F.3d 446, 463 (4th Cir. 2012)

(affirming the district court's rejection of the "defendants' contention—endorsed by the *Said* court—that the piracy statute, 18 U.S.C. § 1651, 'cannot be read to include mere acts of violence committed in an effort to rob another vessel on the high seas, because doing so would render ... superfluous' the attack-to-plunder-a-vessel statute, 18 U.S.C. § 1659") (citing *United States v. Hasan*, 747 F.Supp.2d 599, at 637 (E.D.Va.2010) ("*Hasan I*") and *United States v. Said*, 757 F. Supp. 2d 554, 563 (E.D. Va. 2010), *vacated,* 680 F.3d 374 (4th Cir. 2012)).

Accordingly, the Court finds that there was an error because the jury was instructed on alternative theories of liability for Counts Four and Ten where at least three of the seven predicate offenses were unconstitutional. Although at the time the Court delivered the instructions *Davis* was not law, the Court now may use its discretion pursuant to 28 U.S.C. § 2255 to correct the constitutional error. Moreover, the Court recognizes that the lack of special instructions also runs afoul of the long-established right of jury unanimity enshrined in the Sixth Amendment. *See Ramos v. Louisiana*, 140 S. Ct. 1390, at 1391 (2020) (holding that the "Constitution's text and structure clearly indicate that the Sixth Amendment term "trial by an impartial jury" carries with it some meaning about the content and requirements of a jury trial. One such requirement is that a jury must reach a unanimous verdict in order to convict"). That is, the Court's improper, and general instructions, run violated the unanimity requirement because it is unclear which predicate offenses the jurors relied on to convict Petitioner on Counts Four and Ten. Thus, there is doubt as to whether Petitioner was convicted of the same offense by each juror. Critically, the possibility that at least one juror based his or her verdict on an invalid predicate offense is sufficient to contravene the unanimity requirement and to undermine the fairness of Petitioner's trial guaranteed by the Sixth Amendment. *See, e.g. United States v. Savoires*, 430 F.3d 376, 377-380 (6th Cir. 2005) (finding that the district court's jury instructions were improper because the jury

18

might have found defendant guilty of an "offense"—possession of a firearm during and in relation to a drug trafficking crime—that is not criminalized by § 924(c)…" which is a plain error that "cast substantial doubt on whether the defendant was unanimously convicted of an offense criminalized by § 924(c)").

Now that the Court has found that there is an error, the Court must now address whether the error was harmless. That is, if at least three of the seven predicate offenses do not qualify under the force clause, and if the Court did not use a special verdict, did the § 924(c) and § 924(o) convictions result in harmless error?[4]

## 2. The Error Was Not Harmless

To date, the Fourth Circuit has not directly answered this question. At best, the Fourth Circuit instructs that "under the modified categorical approach, in order to count a defendant's prior offense as a crime of violence … these [*Shepard*] materials must *necessarily* show (plausibility or even likelihood is insufficient) that the defendant['s] … generic conduct [] would constitute a crime of violence…." *United States v. Clay*, 627 F.3d 959, 966 (4th Cir. 2010) (citing *United States v. Bethea*, 603 F.3d 254, at 259–60 & 259 n. 7 (4th Cir.2010)); *see also, United States v. Jefferson*, 674 F.3d 332, 362 (4th Cir. 2012), *as amended* (Mar. 29, 2012) (holding that defendant's guilty verdict based on alternative predicate offenses was harmless because the underlying offenses were valid). Moreover, the Fourth Circuit has demanded certainty to avoid "evidentiary enquiries into the factual basis for the earlier conviction" that the categorical framework forbids. *Shepard*, 544 U.S. at 20–21. The Fourth Circuit also instructs that "in trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced—in the absence of a special verdict identifying the factual bases for

---

[4] The Court notes that this question would be same regardless if only two of the seven offenses plainly qualified as crimes of violence because the issue is equivalent.

conviction—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct." *Vann* 660 F.3d at 774.

Accordingly, Defendant argues that, "if the offense conduct is not specified by the jury, the court must find that all of the alternatively listed offenses would properly qualify as predicates." ECF No. 547 at 9 (citing *Runyon*, 2020 WL 7635761, at *4). Defendant further argues that "if any of the alternative predicates does not qualify under the force clause as a 'crime of violence,' then the § 924(c) conviction fails to rest upon a 'crime of violence' and cannot stand." *Id.* Therefore, Defendant contends that since three of the seven predicate offenses do not categorically qualify as a crime of violence under the force clause of § 924(c), Petitioner's motion to set aside his conviction on Count Four and Ten could be granted.

The Government, however, argues that Defendant has failed to show that there is a constitutional error. Specifically, the Government argues that instructing the jury on multiple alternative predicate offenses, even if one or more are invalid, is not a structural error requiring automatic vacatur based on a general verdict. ECF No. 573 at 13. Therefore, the Government argues that "there are many circumstances in which a conviction will rest on multiple theories of liability, only for it to become clear on appeal that one of them is invalid. In such circumstances, courts do not automatically vacate the problematic count." *Id.*

The Court finds since the jury was instructed on alternative theories of liability, of which at least three offenses (Counts 1-3) are constitutionally invalid after *Davis* and, at most, two additional offenses (Counts 5-6) may not qualify as crimes of violence, the error was not harmless. Although the Government cites to *Hedgpeth v. Pulido*, the Court finds that its holding is consistent with Fourth Circuit and Supreme Court precedent. That is, the Supreme Court has clarified that a "conviction based on a general verdict is subject to challenge if the jury was instructed on

20

alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, at 58 (2008) (citing *Stromberg v. California*, 283 U.S. 359 (1931); *Yates v. United States*, 354 U.S. 298 (1957)). Moreover, in *Hedgpeth*, the Supreme Court held that the harmless-error analysis, and not the structural error analysis, should govern circumstances where a jury was instructed on alternative theories of guilt and where any one of which is invalid. In such cases, "the reviewing court should ask whether the flaw in the instructions had substantial and injurious effect or influence in determining the jury's verdict." *See* 555 U.S. at 59. Furthermore in *Neder v. United States*, the Supreme Court previously clarified that that harmless-error analysis applies to instructional errors *so long as* the error at issue does not categorically "'vitiat[e] *all* the jury's findings.'" 527 U.S. 1, at 11 (1999) (emphasis added) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, at 281 (1993) (erroneous reasonable-doubt instructions constitute structural error)); *see also, California v. Roy*, 519 U.S. 2, (1996) *(per curiam)* (erroneous aider and abettor instruction); *Pope v. Illinois*, 481 U.S. 497 (1987) (misstatement of an element of an offense); *Rose v. Clark*, 478 U.S. 570 (1986) (erroneous burden shifting as to an element of an offense). In *Hedgpeth*, the Court added that "an instructional error arising in the context of multiple theories of guilt no more vitiates *all* the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted." 555 U.S. at 61.

Here, the Court's instructional omission resulted in a "substantial and injurious effect" to Petitioner because there is more than a "reasonable probability that the jury would not have convicted Appellants of the § 924 offenses if the invalid crime-of-violence predicate was not included on the verdict form." *United States v. Jones*, 935 F.3d 266, 274 (5th Cir. 2019); *see also, United States v. McClaren*, 998 F.3d 203, 230 (5th Cir. 2021)*; See Davis v. Ayala*, 576 U.S. 257, at 267–68 (2015) (internal quotation marks and citations omitted) ("[R]elief is proper [on collateral

review] only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful.").[5] Critically, while the Court does not need to be "absolutely certain" that the jury would have still convicted Petitioner of Counts Four and Ten, despite the improper jury instructions and inclusion of the invalid predicate offenses, the Court must at least have more than a "reasonable probability" that but for the improper jury instructions, Petitioner would not have been convicted of these counts. In this case, the Court has a grave doubt that but for the improper jury instructions, Petitioner would not have suffered a substantial and injurious effect due to the jury's verdict. *See Chapman v. California,* 386 U.S. 18, 58-62 (1967) (affirming that in cases involving alternative theories, the reviewing court must determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict" and not whether court was "absolutely certain" that the jury relied on a valid ground) (first quoting *Brecht v. Abrahamson,* 507 U.S. 619, at 623 (1993), then quoting *Pulido v. Chrones,* 487 F.3d 669, 676 (9th Cir. 2007), *vacated and remanded sub nom. Hedgpeth v. Pulido,* 555 U.S. 57 (2008)).

Notably, the Court's grave doubt is based on the record which is unclear on whether the jury relied on the invalid predicate offenses (Counts 1-3) or valid offenses (Counts 5, 6, 7, 8) or a combination thereof to convict Petitioner of Counts Four and Ten. As sister courts have found, the

---

[5] The Court recognizes that the Eleventh Circuit has held otherwise but the instant matter is distinct because there is no evidence in the record showing that the jury relied on either an invalid or valid predicate offense to convict Petitioner of Counts Four and Ten. *See e.g., Parker v. United States,* 993 F.3d 1257, 1265 (11th Cir. 2021) (holding that "the record in this case makes clear that if the jury relied on the invalid Hobbs Act conspiracy predicate, it also relied on the valid drug trafficking predicates. The inclusion of Hobbs Act conspiracy as a potential predicate was therefore harmless); *Granda v. United States,* 990 F.3d 1272, at 1291–94 No. 17-15194, (11th Cir. Mar. 11, 2021); *Parker v. Sec'y for Dep't of Corr.,* 331 F.3d 764, at 778–79 (11th Cir. 2003) (holding that, in the context of a general verdict, "error with respect to one independent basis [for the verdict] is not rendered harmless solely because of the availability of another independent basis where it is impossible to say on which basis the jury's verdict rests").

court's failure to provide special jury instructions resulted in a harmful error, and, thus, Petitioner's convictions must be vacated. *See, e.g., United States v. McCall* , 2019 WL 4675762, at \*6–7 (E.D.V.A. Sept. 25, 2019) (vacating a § 924(c) conviction in light of *Davis* because the jury was instructed that it could find defendant guilty on either a conspiracy offense or an assault with a dangerous weapon offense); *see also, United States v. White*, Case No. 7:11-cr- 276-DC (Dec. 29, 2020), ECF No. 331 (nothing that the "rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them," including in the post *Davis* context") (citing *United States v. Santos*, 553 U.S. 507, 514 (2008)); *but see, United States v. Milton*, No. 5:95-CR-70074, 2021 WL 1554384, at \*8 (W.D. Va. Apr. 20, 2021) (distinguishing *McCall* in holding that "because [defendant's] jury was not instructed on either attempt or conspiracy to commit Hobbs Act robbery, the court finds that his conviction on Count Three necessarily included only actual Hobbs Act robbery").

Because the jury did not have the benefit of a special verdict, Petitioner was sentenced to serve an additional 180 months on Count 10, consecutively to Count 9. Notably, this is not a case where the record makes clear that jury based the § 924 convictions on the valid predicate offense. *See, e.g., United States v. Vasquez*, 672 F. App'x 56, at 61 (2d Cir. 2016) (holding that a § 924 conviction "undoubtedly rest[ed] on a valid drug-trafficking predicate" where the crime of violence and drug conspiracy were "inextricably intertwined" and the jury convicted on the underlying drug conspiracy offense); *see also, United States v. Ventura*, 742 F. App'x 575, 577-578 (2d Cir. 2018) (same), *petition for cert. filed* (U.S. Feb. 12, 2019) (No. 18-8055).

Therefore, Petitioner's Motion is **GRANTED** as to Counts Four and Ten.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Motion is **GRANTED.** Count Nine is **VACATED**. Petitioner is no longer required to serve a term of ninety-six (96) months consecutively to Count 1. Count Ten is **VACATED**. Petitioner is no longer required to serve a term of 180 months, to be served consecutively to Count 9. Count Four is **VACATED**, however, Petitioner is not entitled to resentencing since Petitioner is serving a concurrent sentence of 120 months with Counts 1, 2, 3, 5, 6, 7, and 8.

Petitioner will be resentenced to reflect that Counts 4, 9 and 10 have been vacated. Petitioner is hereby sentenced to one-hundred twenty (120) months in the Bureau of Prisons. The term of imprisonment consists of one-hundred twenty months on Counts 1, 2, 3, 5, 6, 7, and 8, to be served concurrently. All other provisions of the Court's judgment shall remain unchanged.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 19, 2021

UNITED STATES DISTRICT JUDGE

24